UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
JANE C. DANIEL,                                Chapter 7
        DEBTOR.                         Case No. 13-16365-WCH

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The matter before the Court is the "Motion Objecting to Debtor's Claim of an Exemption and Objecting to Inclusion of His Property in Debtor's Estate" (the "the Objection") filed by the Robert Nickse ("Nickse") and the "Debtor's Response to Creditor, Robert Nickse's Objection to Homestead Exemption" (the "Response") filed by Jane C. Daniel (the "Debtor"). Through the Objection, Nickse, the Debtor's former spouse, asserts that a sale provision in their separation agreement has divested the Debtor of a real property interest in the their former marital residence and instead left her with only an interest in future sale proceeds that is not entitled to protection under the Massachusetts Homestead Statute.[1] The Debtor disputes that she has been divested of her real property interest, and through an oral motion made in open Court (the "Oral Motion"), seeks sanctions against Nickse under Fed. R. Bankr. P. 9011 for the advancement of the Objection. For the reasons set forth below, I will overrule the Objection and deny the Oral Motion.

---

[1] Mass. Gen. Laws ch. 188, § 1 *et seq.*

1

## II. BACKGROUND

In light of my Memorandum of Decision dated April 13, 2015 in the related adversary proceeding, the facts necessary to resolve this objection are no longer in dispute.[2]

Nickse and the Debtor married on December 24, 1998. During the marriage, they resided and operated a bed and breakfast at real property located at 4 Hovey Street in Gloucester, Massachusetts (the "Marital Residence"). The Debtor acquired the Marital Residence by quitclaim deed recorded in the Essex South Registry of Deeds (the "Registry") on July 30, 1998.[3] By a deed recorded in the Registry on January 29, 1999, she conveyed title to the Marital Residence to herself and Nickse as tenants by the entirety (the "1999 Deed").[4] Nickse and the Debtor separated on February 16, 2003, and divorce proceedings commenced in the Essex County Probate and Family Court (the "Probate Court") the following year.[5]

As is discussed in greater detail in my prior decision, the Debtor and Nickse were embroiled in litigation with Vera Lee while the divorce proceeding was pending.[6] In order to simplify matters here, it is enough to say that despite various acts seeking to alter how title to the Marital Residence was held, it was held by the Debtor and Nickse at all relevant times.[7] Notwithstanding this gloss, it is important to understand that the Debtor contested this point prior to the entry of my decision on April 13, 2015, during which the present Objection was pending.

---

[2] *See Nickse v. Daniel (In re Daniel)*, 528 B.R. 509 (Bankr. D. Mass. 2015).

[3] *In re Daniel*, 528 B.R. at 510.

[4] *Id.*

[5] *Id.*

[6] *Id.* at 510-512.

[7] *Id.* at 516.

2

On August 23, 2007, the Probate Court entered a Judgment of Divorce Nisi (the "Divorce Judgment") incorporating, but not merging with, a separation agreement executed by Nickse and the Debtor on January 24, 2007 (the "Separation Agreement").[8] Article One of the Separation Agreement provides in relevant part:

> Within one year of the execution of this Agreement, unless the parties mutually agree otherwise, the Marital Residence shall be sold and the proceeds divided as follows . . . [after payment of the first mortgage and a debt owed to David Holscher] . . . [s]eventy percent (70%) of the remaining equity shall be paid to the Wife, with a minimum of $300,000 going to the Wife . . . [t]hirty percent (30%) of the remaining equity shall be paid to the Husband, with a maximum of $250,000 going to the Husband.[9]

Pursuant to its own terms, the Divorce Judgment became final on November 21, 2007.[10] Ultimately, the Marital Residence was never sold and Nickse never filed an action to enforce the Separation Agreement.[11]

The Debtor filed a voluntary Chapter 7 petition on October 31, 2013. The following day, November 1, 2013, John J. Aquino (the "Trustee") was appointed Chapter 7 trustee of the Debtor's estate. On "Schedule A – Real Property" ("Schedule A"), the Debtor listed herself as the "Sole Owner" of the Marital Residence, which she assigned a fair market value of $1,000,000.00.[12] On "Schedule C – Property Claimed as Exempt" ("Schedule C"), she claimed an exemption in the Marital Residence pursuant to Mass. Gen. Laws ch. 188, § 1 in the amount of $500,000.00 (the "Exemption").[13]

---

[8] *Id.* at 512.

[9] *Id.* at 511.

[10] *Id.* at 512.

[11] *Id.*

[12] Schedule A, Docket No. 15.

[13] Schedule C, Docket No. 15.

3

The Trustee conducted the first meeting of creditors held pursuant to 11 U.S.C. § 341(a) (the "Meeting of Creditors") on December 10, 2013. The Meeting of Creditors was not concluded at this time, and several continued meetings have been held. Finally, the Trustee adjourned the Meeting of Creditors on January 29, 2015.[14]

On February 7, 2014, Nickse commenced the adversary proceeding, but initially sought to except the 30% net equity interest up to $250,000 in the Marital Residence that was awarded to him (the "Residential Interest") in the Separation Agreement from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(15). On the same day, Nickse filed a "Motion Objecting to Debtor's Claim of an Exemption and Objecting to Inclusion of His Property in Debtor's Estate" (the "Original Objection"), requesting a ruling that the Residential Interest is neither property of the Debtor's estate nor subject to the Exemption. Both the Trustee and the Debtor opposed and, after a hearing on March 5, 2014, I denied Original Objection as procedurally improper. On March 14, 2014, Nickse amended his complaint to seek, *inter alia*, a declaratory judgment that the Residential Interest is not property of the estate ("Count III"). The Debtor and Trustee both filed answers, but the Trustee has since abandoned the Property pursuant to 11 U.S.C. § 554.

On November 14, 2014, Nickse moved for summary judgment on all counts of his complaint, which the Debtor opposed on the basis that the various title transfers left title to the Marital Residence in question. After a hearing on January 29, 2015, I took the matter under advisement.

On March 2, 2015, Nickse filed the Objection, largely echoing the Original Objection and Count III, but also objecting to the Exemption on the basis that the Divorce Judgment divested

---

[14] Although there is no disagreement among the parties that the Meeting of Creditors was continued several times and ultimately concluded on January 29, 2015, the Trustee has never made any entries on the docket reporting the status of the Meeting of Creditors.

4

the Debtor of her real property interest in the Marital Residence. The Debtor filed the Response on March 31, 2015. I heard the Objection on April 1, 2015, at which time the Debtor's counsel argued that the Objection was identical to the Original Objection that I already denied and requested that I order Nickse to show cause why I should not impose sanctions under Fed. R. Bankr. P. 9011 for filing a frivolous pleading. After hearing from both sides, I took the Objection and the Oral Motion under advisement, noting that the issues presented were intertwined with the adversary proceeding.[15]

On April 13, 2015, I entered a Memorandum of Decision and separate order in the adversary proceeding granting summary judgment to Nickse on Count III. As suggested above, I found that the net effect of the various title transfers and Divorce Judgment was to place legal title in Nickse and the Debtor as reflected in the 1999 Deed, but converted their tenancy to one in common.[16] Accordingly, I concluded that the Residential Interest was not property of the Debtor's estate.[17] Having so ruled, the Objection is now ripe for determination.[18]

### III. POSITIONS OF THE PARTIES

A. Nickse

The primary thrust of the Objection is that the Divorce Judgment divested the Debtor of her property interest in the Marital Residence and replaced it with a seventy percent interest in

---

[15] On April 1, 2015, I also heard and took under advisement the "Objection by Creditors [sic], Vera Lee, to Debtor's Claim of Homestead Exemption" (the "Lee Objection"). Because the Objection and Lee Objection raise substantially different issues, I will address the Lee Objection separately.

[16] *In re Daniel*, 528 B.R. at 516.

[17] *Id.*

[18] In light of my prior ruling in the adversary proceeding that the Residential Interest does not constitute property of the estate, the sole issue presented by the Objection is the validity of the Exemption. As such, the scope of this memorandum is limited to Nickse's objection to the Exemption and the Debtor's Oral Motion.

the net sale proceeds.[19] Nickse argues that because the Debtor's interest is now in personal property and not real property, it is not protected by the Massachusetts Homestead Statute. Relying on *In re Gourdin*,[20] he contends that the termination of the Debtor's property interest is not contingent on the actual sale of the Marital Residence.[21]

    B. The Debtor

In contrast, the Debtor argues that the Divorce Judgment did not divest her of a property interest in the Marital Residence. Noting that the terms of the Separation Agreement, which were incorporated into the Divorce Judgment, direct that a sale of the Marital Residence take place "[w]ithin one year of the execution of this Agreement, *unless the parties mutually agree otherwise*,"[22] the Debtor asserts that she has not been clearly and definitively on a date certain divested on an ownership interest in the Marital Residence. Instead, she posits that the Separation Agreement contemplates that she might continue to hold an ownership interest in the Marital Residence indefinitely. Additionally, the Debtor distinguishes *In re Gourdin* on the basis that, unlike that case, the Probate Court has not expressly divested her of her property interest.

With respect to the Oral Motion, the Debtor complains that the Objection is duplicative of both the adversary proceeding and the Original Objection, which I ruled was procedurally improper. Accordingly, she urges that I issue an order to show cause pursuant to Fed. R. Bankr.

---

[19] I note that Nickse maintains, as I have since found, that the Residential Interest is not property of the estate. As such, he argues that the Exemption cannot apply to the Residential Interest. Because it is irrefutable that the Debtor cannot claim an exemption in property she does not own, I need not discuss this point further.

[20] *Gourdin v. Agin (In re Gourdin)*, 431 B.R. 885, 888 (B.A.P. 1st Cir. 2010).

[21] Nickse also cites *Maiona v. Vassilowitch (In re Vassilowitch)*, 72 B.R. 803 (Bankr. D. Mass. 1987), but that case only concerns whether a Chapter 7 trustee could sell a former marital residence pursuant to 11 U.S.C. § 363(h) subject to the non-debtor former spouse's two-thirds interest granted to her by a divorce decree.

[22] *In re Daniel*, 528 B.R. at 511 (emphasis added).

6

P. 9011 why Nickse should not be ordered to pay the Debtor's reasonable attorney's fees in opposing the Objection.

## IV. DISCUSSION

### A. The Objection

The commencement of a bankruptcy case creates an estate comprised of all legal and equitable interests of a debtor in property as of the commencement of the case.[23] Under 11 U.S.C. § 522(b), a debtor may exempt certain property from the estate pursuant to either the federal bankruptcy exemptions set forth in 11 U.S.C. § 522(d) or the exemptions available under state or local law, provided that the debtor may only take advantage of one exemption scheme.[24] Rights to exemptions are fixed as of the date of the petition.[25] Pursuant to 11 U.S.C. § 522(l), exemptions listed on Schedule C are presumptively valid in the absence of an objection.[26] Therefore, Fed. R. Bankr. P. 4003(c) places the burden to prove that an exemption is not properly claimed on the objecting party.[27]

In the present case, the Exemption is claimed pursuant to Massachusetts Homestead Statute. Generally speaking, "[a]n estate of homestead to the extent of the declared homestead exemption,"[28] that is "an exemption in the amount of $500,000 created by a [properly executed and recorded] written declaration,"[29] "in a home,"[30] which is defined as one of various residential

---

[23] *See* 11 U.S.C. § 541(a).

[24] *See* 11 U.S.C. § 522(b)(1)-(3).

[25] 11 U.S.C. § 522(b)(3)(A).

[26] 11 U.S.C. § 522(l) ("Unless a party in interest objects, the property claimed as exempt on such list is exempt.").

[27] Fed. R. Bankr. P. 4003(c). *See Shamban v. Perry (In re Perry)*, 357 B.R. 175, 178 (B.A.P. 1st Cir. 2006).

[28] Mass. Gen. Laws ch. 188, § 3.

[29] Mass. Gen. Laws ch. 188, § 1.

7

dwelling structures,[31] "may be acquired by 1 or more owners who occupy or intend to occupy the home as a principal residence."[32] Here, Nickse's objection contests the applicability of the Massachusetts Homestead Statute on the basis that the Debtor did not hold an interest in real property on the petition date, and thus has no "home" to protect.[33] Indeed, the Objection is premised on Nickse's belief that the Divorce Judgment, which incorporated the Separation Agreement, divested the Debtor of her real property interest in the Marital Residence upon the conclusion of the Nisi period and replaced it with a seventy percent interest in the future net sale proceeds. The terms of the Separation Agreement, however, do not support this contention.

Article One of the Separation Agreement directs that "[w]ithin one year of the execution of this Agreement, unless the parties mutually agree otherwise, the Marital Residence shall be sold and the proceeds divided" as provided therein.[34] Notably, this provision lacks any divesture language, and does not even unequivocally require a sale of the Marital Residence to be completed within a year. To the contrary, the phrase "unless the parties mutually agree otherwise" contemplates, as the Debtor correctly notes, that the Marital Residence may not be sold within one year. Since Nickse never moved to compel the sale of the Marital Residence in the almost six years between the Divorce Judgment becoming final and the Debtor's bankruptcy petition, I infer that he and the Debtor must have "agreed otherwise."

---

[30] Mass. Gen. Laws ch. 188, § 3.

[31] *See* Mass. Gen. Laws ch. 188, § 1.

[32] Mass. Gen. Laws ch. 188, § 3.

[33] The Lee Objection raises broader issues regarding the applicability of the Massachusetts Homestead Statute and the extent of the protection it affords, if any, in this case. Here, I need only address the issue raised by Nickse— whether the Debtor holds an interest in real or personal property.

[34] *In re Daniel*, 528 B.R. at 511.

8

Case 13-16365   Doc 77   Filed 06/09/15   Entered 06/09/15 11:31:19   Desc Main
Document    Page 9 of 12

Nickse's reliance on *In re Gourdin* is misplaced. In that case, pursuant to a "Judgment of Divorce Nisi," the probate court awarded the marital residence to debtor's former spouse and ordered the debtor to "forthwith convey all right, title and interest" to her.[35] She became obligated to sell the residence after their youngest child turned 18 or upon his graduation from high school, whichever occurred later, but authorized to retain a specified amount of money from the net proceeds of sale.[36] The debtor was to retain no interest in the marital residence beyond a claim against his former spouse for 25% of the net proceeds of sale, less any amounts for certain liens and unpaid child support.[37] When the debtor failed to convey his interest to his former spouse, the probate court entered an order pursuant to Mass. R. Dom. Rel. P. 70[38] which divested the debtor of title and vested it in a master for the purpose of executing a deed to convey the marital residence to the debtor's former spouse.[39]

---

[35] *In re Gourdin*, 431 B.R. at 888.

[36] *Id.*

[37] *Id.*

[38] Mass. R. Dom. Rel. P. 70 provides:

> **Rule 70. Judgment for Specific Acts: Vesting Title**
>
> If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party. On application of the party entitled to performance, the clerk shall issue a writ of attachment against the property of the disobedient party to compel obedience to the judgment. The court may also in proper cases adjudge the party in contempt. If real or personal property is within the Commonwealth, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law. When any order or judgment is for the delivery of possession, the party in whose favor it is entered is entitled to a writ of execution upon application to the clerk.

[39] *In re Gourdin*, 431 B.R. at 888.

After the deed was executed, but before it was recorded, the debtor filed a Chapter 7 petition and sought to claim his interest in the marital residence as exempt.[40] After the Chapter 7 trustee objected, the bankruptcy court ruled that the orders of the probate court terminated the debtor's interest in the marital residence prepetition, leaving him with nothing but a right to payment that is not protected by the Massachusetts Homestead Statute.[41] On appeal, the United States Bankruptcy Appellate Panel affirmed.[42]

Ultimately, *In re Gourdin* is distinguishable from the present case in two major respects. First, unlike the present case which concerns an agreement by the parties to *eventually* sell the Marital Residence and divide the proceeds, the debtor in *In re Gourdin* was unequivocally ordered to convey immediately his interest in the home to his former spouse.[43] Second, upon that debtor's refusal, the probate court in *In re Gourdin* entered an order pursuant to Mass. R. Dom. Rel. P. 70 that expressly divested him of title and vested it in a master for the purpose of completing the mandated conveyance.[44] Here, the Probate Court never entered any such order.

For these reasons, I find the Objection is ill-taken.

B. The Oral Motion

The Oral Motion seeks entry of an order directing Nickse to show cause why sanctions should not be imposed under Fed. R. Bankr. P. 9011 for filing a purportedly duplicative, and thus improper, pleading. Fed. R. Bankr. P. 9011 "emphasizes responsible behavior on the part of [attorneys]" and requires them "to conduct [themselves] in a manner bespeaking reasonable

---

[40] *Id.*

[41] *Id.* at 889-890.

[42] *Id.* at 893.

[43] *Id.* at 888.

[44] *Id.*

professionalism and consistent with the orderly functioning of the judicial system."[45] "To achieve these goals, Rule 11 requires attorneys to take responsibility for the claims and defenses they represent . . . ."[46] Specifically, Fed. R. Bankr. P. 9011(b) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> >
> > (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.[47]

"If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may . . . impose an appropriate sanction upon the attorneys . . . that have violated subdivision (b)."[48]

The rule, however, also contains certain procedural requirements, including a "safe harbor" provision.[49] The safe harbor provision requires that "a party seeking sanctions must

---

[45] *Featherston v. Goldman (In re D.C. Sullivan Co., Inc.)*, 843 F.2d 596, 598 (1st Cir. 1988), *aff'd in part on rehearing en banc*, 878 F.2d 1478 (1989). Because Fed. R. Bankr. P. 9011 is derrived from Fed. R. Civ. P. 11, the United States Court of Appeals for the First Circuit has explained that "Rule 11 jurisprudence is largely transferrable to Rule 9011 cases." *Id.*

[46] *Cruz v. Savage*, 896 F.2d 626, 630 (1st Cir. 1990).

[47] Fed. R. Bankr. P. 9011(b).

[48] Fed. R. Bankr. P. 9011(c).

serve its motion on the opposing party and may file the motion with the court 21 days later only if the challenged pleading is neither withdrawn nor corrected within that time."[50] The purpose of this requirement "is to allow a party to privately withdraw a questionable pleading without fear that the withdrawal will be viewed by the court as an admission of a Rule 11 violation."[51] "The safe harbor provision must be strictly complied with in order for sanctions to be imposed."[52]

In the present case, the Debtor, although aggrieved by the Objection that was filed on March 2, 2015, did not serve a motion for sanctions on Nickse prior to the hearing held on April 1, 2015.  For this reason alone, the Oral Motion must be denied.

## V. CONCLUSION

In light of the foregoing, I will enter an order overruling the Objection and denying the Oral Motion.

                                              William C. Hillman
                                              United States Bankruptcy Judge

Dated: June 9, 2015


Counsel Appearing:

    Bailey Buchanan Nowak, Metaxas Brown Pidgeon LLP, Beverly, MA,
        for Nickse
    Peter R. Kaplan, Law Offices of Peter R. Kaplan, PC, Salem, MA,
        for the Debtor

---

[49] Fed. R. Bankr. P. 9011(c)(1)(A).

[50] *In re M.A.S. Realty Corp.*, 326 B.R. 31, 38 (Bankr. D. Mass. 2005).

[51] *Young v. City of Providence*, 404 F.3d 33, 39 (1st Cir. 2005).

[52] *In re M.A.S. Realty Corp.*, 326 B.R. at 38.